UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JEANNE M. IWATA, )
   Plaintiff )
              ) CIVIL ACTION NO. 04 10536 WGY
v. )
              )
INTEL CORPORATION )
and MATRIX ABSENCE )
MANAGEMENT, INC., )
   Defendants )

**VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND MONEY DAMAGES**

**Introductory Statement**

The plaintiff is a white female who was born on April 9, 1952. She is currently fifty-one years of age and presently disabled. On July 20, 2001, at the request of Intel and Matrix Absence Management, Inc, the plaintiff was examined by an Independent Medical Examiner, Ronald Schouten, M.D. Dr. Schouten concluded that, "As of the date of this examination, Ms. Iwata was suffering from Major Depression, Moderate as well as Post-Traumatic Stress Disorder, Chronic. . . . She appeared to have made little progress in terms of the resolution of her symptoms . . . " The plaintiff's short-term disability leave expired on February 2, 2002.

As of February 2, 2002, the plaintiff's psychologist determined that she was still totally disabled. Prior to that date, the plaintiff formally applied for long-term disability benefits under the employee disability policy which covered her. On February 22, 2002, the plaintiff's employment with Intel was terminated because of her inability to return to work. On March

...

2

20, 2002, she received a letter from Matrix Absence Management, Inc, which denied her application for Long-Term Disability Benefits because, under the language of the policy,

> "No participant shall be entitled to a disability benefit if his or her Disability arises out of, relates to, is caused or resulted from . . . Mental, emotional of [sic] psychiatric illness or disorder of any type . . . unless he or she is confined in a mental hospital for such illness at the time a monthly disability benefit is otherwise due an [sic] payable."

### Jurisdiction

1. This suit is brought under the provisions of 42 U.S.C., § 12111-et seq., ADA; § 504 of the federal Rehabilitation Act, 29 U.S.C.§ 791-et seq.; and 29 U.S.C. § 1001 et seq. the Employee Retirement Income Security Act (ERISA), as authorized by 29 U.S.C. § 1132. This court's jurisdiction to hear those claims is based upon 28 U.S.C. § 1331 as they are claims arising under the laws of the United States.

2. In addition, a pendent state claim arising under the Massachusetts constitution is brought under Rule 18(a) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1331.

3. The plaintiff has complied with all jurisdictional conditions precedent to the filing of this civil action.

### Parties

4. The plaintiff, Jeanne Iwata, resides at 101 Westland Road Weston, Massachusetts 02493-1327.

5. Defendant Intel is a foreign corporation which has, as its Massachusetts headquarters, an office in Hudson, Massachusetts.

3

6. Defendant Matrix Absence Management is a foreign corporation which has, as headquarters, an office at 7 Skyline Drive, in Hawthorne, New York.

## Statement Of The Facts

7. The plaintiff is a white female who was born on April 9, 1952.

8. She was initially employed by Intel's predecessor-in-interest, Digital Equipment Corporation (DEC), in January of 1997 at its Hudson, Massachusetts facility.

9. She was employed as an occupational health nurse.

10. The following year, Intel acquired DEC.

11. As an employee of Intel and its predecessor-in-interest, the plaintiff met all performance expectations.

12. A number of employees who worked for DEC had significant difficulties adjusting to the change of corporate culture after Intel's acquisition of the Hudson facility.

13. As an occupational health nurse, the plaintiff worked closely with employees and she was often required to review the medical conditions of employees who sought to return to work after a medical leave of absence.

14. In November of 2000, the plaintiff reported an incident to her managers because of a comment made by one employee who had expressed hostility toward Intel's managers on a number of earlier occasions.

15. The employee previously had to been "cleared" by the plaintiff to return to work because he had a defibrillator

4

implanted for a cardiac disorder.

16. After his return to work, the employee encountered performance problems and was scheduled to go on a performance warning.

17. Prior to his going on a performance warning, the employee alleged a workplace accident.

18. His personal care physician kept him out of work for a week.

19. The Intel physician returned him to work.

20. Upon his return to work, the employee again met with the plaintiff.

21. The employee told the plaintiff that he had it and that it had been a difficult month for him at Intel.

22. He then remarked, "I'm going to get a gun permit."

23. The plaintiff asked him, "Are you going to get a gun?"

24. He replied, "No. I'm just going to let them know that I have one. My crazy Brazilian son-in-law, who has a gun, says that we need to come in here and take care of things."

25. As soon as the employee left, the plaintiff spoke with the other nurse practitioner on duty and, because she was a member of the Workplace Response Team,[1] telephoned the employee's manager to warn him about the incident and to urge her to take precautions.

26. Although the plaintiff correctly followed company policy, Intel's security manager dismissed the plaintiff's concerns about

---

[1] The WRT is a work team which Intel established to respond to potential incidents of violence in the workplace.

5

the employee as "just one data point and no threat."

27. The security manager's dismissal of this threat, coupled with the employee's resignation under pressure, triggered a severe emotional reaction on the plaintiff's part because of fear that he might return and "open fire in the plant."

28. The employee subsequently tried to return to his employment at Intel and appealed his resignation, stating that he had done so under duress.

29. He also reportedly claimed age discrimination.

30. On February 5, 2001, the plaintiff received a telephone call from the other nurse practitioner, who informed her that the employee in question had sent the two of them an email.

31. The email read as follows:

> "Good morning folks.
> I am in the process of an open door discrimination complaint against the managers I worked for in Hudson. Because of this, I have been in contact with a corporate Intel HR person. This person told me last week that one of the nurses in Hudson told him or someone in Hudson, something about me getting a gun. The HR person wouldn't tell me which nurse supposedly made the statement. The reason I am writing this note to the two of you is because the two of you are the only nurses I normally interact with. I find it hard to believe that one of you folks would make such a statement....If one of you said it, please be brave enough to admit it so that I may regain my respect for the other...."

32. Upon review of this email, the plaintiff became fearful, she experienced panic and she became profoundly depressed.

33. These emotional reactions were exacerbated by Intel's cavalier treatment of the troubled former employee's email.

34. The plaintiff immediately sought counselling with Dr. Mark Sorenson.

6

35. On February 16, 2002, Dr. Sorenson determined that the plaintiff was totally disabled and counselled her to apply for Short Term Disability Benefits (STD).

36. On a number of occasions thereafter, Dr. Sorenson recommended that the plaintiff's short-term disability leave of absence be extended.

37. On July 20, 2001, at the request of Intel and Matrix Absence Management, Inc, the plaintiff was examined by an Independent Medical Examiner, Ronald Schouten, M.D.

38. Dr. Schouten concluded that, "As of the date of this examination, Ms. Iwata was suffering from Major Depression, Moderate as well as Post-Traumatic Stress Disorder, Chronic....She appeared to have made little progress in terms of the resolution of her symptoms..."

39. The plaintiff's short-term disability leave expired on February 2, 2002.

40. As of February 2, 2002, the plaintiff's psychologist determined that she was still totally disabled.

41. Prior to that date, the plaintiff formally applied for long-tern disability benefits under the employee disability policy which covered her.

42. On February 22, 2002, the plaintiff's employment with Intel was terminated because of her inability to return to work.

43. On March 20, 2002, the plaintiff received a letter from Matrix Absence Management, Inc, which denied her application for Long-Term Disability Benefits because, under the language of the

7

policy.

> "No participant shall be entitled to a disability benefit if his or her Disability arises out of, relates to, is caused or resulted from . . . Mental, emotional of [sic] psychiatric illness or disorder of any type . . . unless he or she is confined in a mental hospital for such illness at the time a monthly disability benefit is otherwise due an [sic] payable."

44. On April 29, 2002, the United States Social Security Administration determined that the plaintiff was totally disabled.

45. The plaintiff subsequently filed an administrative complaint with the Massachusetts Commission Against Discrimination and received from the United States EEOC a right-to-sue letter on December 19, 2003.

### First Claim For Relief:
### ERISA: Denial of Long-Term Disability Benefits

46. The plaintiff hereby incorporates the facts alleged in paragraphs 1 through 45.

47. The defendants haves, by their actions, discriminated against, interfered with, the plaintiff's right to long-tern disability benefits unlawfully, as provided for under 29 U.S.C. § 1140.

48. The defendants are liable to the plaintiff for her accrued long-term disability benefits plus interest from the date of its cancellation of her benefits and reasonable attorneys' fees.

### Second Claim For Relief:
### § 504 Of the Rehabilitation Act

49. The plaintiff hereby incorporates the facts alleged in paragraphs 1 through 45.

50. The defendants have, by their actions, discriminated against and/or interfered with, the plaintiff's right to long-term disability benefits unlawfully, as provided for under 29 U.S.C. § 394 et seq.

51. The defendants are liable to the plaintiff for her accrued long-term disability benefits plus interest from the date of its cancellation of her benefits and reasonable attorneys' fees.

### Third Claim For Relief:
### Americans With Disabilities Act

52. The plaintiff hereby incorporates the facts alleged in paragraphs 1 through 45.

53. The defendants have, by their actions, discriminated against and/or interfered with, the plaintiff's right to long-term disability benefits unlawfully, as provided for under 29 U.S.C. § 1630.4(f).

54. The defendants are liable to the plaintiff for her accrued long-term disability benefits plus interest from the date of its cancellation of her benefits and reasonable attorneys' fees.

### Fourth Claim For Relief:
### Violation Of Mass. Constitution

55. The plaintiff hereby incorporates the facts alleged in paragraphs 1 through 45.

56. The defendants have, by their actions, discriminated against and/or interfered with, the plaintiff's right to long-term

9

disability benefits unlawfully, in violation of Massachusetts Constitution, Article 114, which bars discrimination "under any program or activity in the Commonwealth."

**Prayers For Relief**

WHEREFORE, the plaintiff prays that this Court advance this case in every way on the docket and grant a speedy trial and, as a result of said trial, he prays and demands:

(1) With respect to the First Claim For Relief, grant an affirmative injunction which orders the defendants to restore the plaintiff's long-term disability benefits and to cease discriminating against the plaintiff, and award the plaintiff money damages for lost benefits, plus pre-judgment interest, post judgment interest, front-pay, court costs and reasonable attorney's fees as provided for under 29 U.S.C. §1132.

(2) With respect to the Second Claim For Relief, grant an affirmative injunction which orders the defendants to restore the plaintiff's long-term disability benefits and to cease discriminating against the plaintiff, and award her money damages for lost benefits, plus pre-judgment interest, post judgment interest, front-pay, court costs and reasonable attorney's fees as provided for under 29 U.S.C. §394.

(3) With respect to the Third Claim For Relief, grant an affirmative injunction which orders the defendants to restore the plaintiff's long-term disability benefits and to cease discriminating against the plaintiff, and award her money damages for lost benefits, plus pre-judgment interest, post judgment

10

interest, front-pay, court costs and reasonable attorney's fees as provided for under 29 U.S.C. §. 16304.f

(4) With respect to the Fourth Claim For Relief, award the plaintiff money damages for lost benefits, plus pre-judgment interest, post judgment interest, front-pay, court costs and reasonable attorney's fees.

(5) Grant such other and further relief as this Court may deem just and equitable.

### Jury Demand

The plaintiff demands a trial by jury on all issues herein which may be tried by right of jury and an advisory jury on all factual issues material to claims not triable by right by a jury, pursuant to Federal Rule Civil Procedure 39(c).

    Respectfully submitted,

    JEANNE M. IWATA

    By her attorneys,

    */s/ Paul R. Nevins*

    Paul L. Nevins
    BBO No. 369930
    47 Church Street
    Wellesley, Massachusetts 024182
    (781) 237-9018

    Philip R. Olenick
    BBO No. 378605
    101 Tremont Street - Suite 801
    Boston, Massachusetts 02108

## Verification

I, Jeanne M. Iwata, state that I have read the foregoing complaint, that I have personal knowledge of the facts which it alleges, and that the facts alleged are true to the best of my knowledge and belief.

*Jeanne M. Iwata*
Jeanne M. Iwata