UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEANNE M. IWATA,<br><br>            Plaintiff,<br><br>      v.<br><br>INTEL CORPORATION and MATRIX ABSENCE MANAGEMENT, INC.<br><br>            Defendants. | C.A. No. 04-10536 (WGY) |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Intel Corporation ("Intel") and Matrix Absence Management, Inc. ("Matrix") (collectively "Defendants") submit this memorandum of law in support of their joint motion to dismiss the Complaint of Plaintiff Jeanne Iwata ("Iwata").

INTRODUCTION

This case arises out of the denial of Iwata's request for long-term disability benefits under Intel's Long-Term Disability Plan ("Plan"). According to Iwata, she became totally disabled due to a mental illness after she witnessed a co-worker threaten to "get a gun permit." Iwata alleges that this incident caused her to become fearful and "profoundly depressed." In February 2002, Iwata sought long-term disability benefits related to her illness. However, the Plan limited coverage for mental illnesses to those requiring hospitalization, and, here, Iwata was never hospitalized. Thus, in March 2002, Matrix, the administrator of the Plan, denied her request.

The essence of Iwata's Complaint is that the Plan's limitation of coverage for mental disabilities is discriminatory. As a matter of law, however, there is nothing unlawful or

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

discriminatory about the requirement of hospitalization for coverage of a mental disability.  None of the federal statutes upon which Iwata relies in her Complaint -- the Employee Retirement Income Security Act of 1974 ("ERISA"), the Americans With Disabilities Act ("ADA"), or the Rehabilitation Act -- requires an employee benefit plan such as the long-term disability plan at issue here to provide a certain level of benefits or provide coverage equally to all categories of disabilities.  To the contrary, the laws relied upon by Iwata expressly permit the divergent levels of benefits provided by Defendants' Plan.  Iwata has simply not stated a claim as a matter of law under ERISA, the ADA or the Rehabilitation Act.  Moreover, by failing to exhaust the administrative remedies available to her under the Plan, Iwata is barred from bringing the legal claims alleged here.  Finally, as to Iwata's state law claim under the Massachusetts Constitution, it is preempted by ERISA.

Iwata's Complaint should be dismissed in its entirety with prejudice.

## FACTS AS ALLEGED IN THE COMPLAINT[1]

Iwata is a former employee of Intel.  See Complaint, ¶¶ 8-11.  She worked as an occupational health nurse, which required her to review the medical conditions of employees who sought to return to work after an injury.  Id. at ¶¶ 9, 13.  In November 2000, a male co-worker ("Co-worker") met with Iwata regarding a workplace injury.  Id. at ¶¶ 17, 20.  According to Iwata, Co-worker said that he had had a difficult month at Intel and was going to get a gun permit.  Id. at ¶¶ 21-22.  Iwata then asked him whether he was going to get a gun.  Id. at ¶ 23.  He responded no, but he would let "them know that I have one" and that his "crazy Brazilian son-in-law, who has a gun, says that we need to come in here and take care of things."  Id. at ¶ 24.

---

[1]  Defendants accept as true the allegations of the Complaint solely for the purpose of this Motion to Dismiss.

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

Thereafter, Iwata reported the incident, and Co-worker ultimately was forced to resign.[2] Id. at ¶¶ 25, 27 and 28.  However, Iwata was dissatisfied with Intel's handling of the situation. Id. at ¶ 26.  According to Iwata, the incident triggered a "severe emotional reaction" because of a fear that Co-worker would return and "open fire on the plant."  Id. at ¶ 27.

In February 2001, Iwata received an e-mail from Co-worker, in which he sought to find out who had reported to Intel that he had made a comment about a gun (which he apparently denied).  Id. at ¶¶ 30-31.  According to Iwata, the e-mail caused her to be "fearful," she experienced panic and became "profoundly depressed."  Id. at ¶ 32.

As a result of this incident, Iwata sought counseling from her doctor, Dr. Mark Sorenson. Id. at ¶ 34.  Dr. Sorenson determined that Iwata was "totally disabled."  Id. at ¶ 35.  Iwata applied for and received short-term disability benefits, and took a short-term disability leave of absence from her position at Intel.  Id. at ¶¶ 35-36, 39.  That short-term leave of absence was extended on a number of occasions by Dr. Sorenson.  Id. at ¶ 36.

Matrix is the administrator of Intel's short-term and long-term disability plans.  At the request of Intel and Matrix, on July 20, 2001, Iwata submitted to an independent medical exam by Dr. Ronald Schouten.  Id. at ¶ 37.  According to Dr. Schouten, Iwata suffered "from Major Depression, Moderate as well as Post-Traumatic Stress Disorder, Chronic."[3]  Id. at ¶ 38.

On February 2, 2002, Iwata's short-term disability benefits expired.  Complaint, ¶ 39.  As of that date, Iwata continued to be "totally disabled."  Id. at ¶ 40.  As Iwata admits in her Complaint, "On February 22, 2002, [her] employment with Intel was terminated because of her inability to return to work."  Id. at ¶ 42.

---

[2]  According to Iwata, Co-worker later claimed that his forced resignation was because of age discrimination.  Complaint, ¶ 29.

[3]  In his report and examination, Dr. Schouten linked Iwata's condition to an injury Iwata had suffered in 1974.

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

Prior to the termination of her short-term disability benefits, Plaintiff applied for long-term disability benefits under Intel's Long-Term Disability Plan.[4] Complaint, ¶ 41. On March 20, 2002, Matrix, by letter, denied Iwata's claim for long-term disability benefits, because the Plan, by its terms, did not cover any disability arising out of a mental, emotional or psychiatric disorder or illness, unless the individual is confined to a mental hospital for such disorder or illness. Id. at ¶ 43 (quoting letter). The letter denying her claim included a procedure by which Iwata could appeal that denial of benefits. See Letter attached hereto at Tab 1. The letter stated, "Under the Employee Retirement Income Security Act of 1974 (ERISA), you may request a review of this determination by the Intel Disability Appeals Committee." Id. The letter further stated that Iwata had 180 days from the date of receipt to submit a written request for review. Id. Iwata does not allege that she attempted to request a review of the denial of benefits, and in fact she did not. See Complaint.

On April 29, 2002, the U.S. Social Security Administration also found that Ms. Iwata was "totally disabled."[5] Complaint, ¶ 44. Iwata admits that at all relevant times she was totally disabled from working for Intel, does not claim that she has recovered sufficiently to work, and does not allege that Intel or Matrix failed to accommodate her claimed disability.

ARGUMENT

In her Complaint, Iwata asserts four claims for relief against the Defendants: (1) a claim of discrimination under ERISA; (2) a violation of the Rehabilitation Act; (3) a violation of the Americans With Disabilities Act ("ADA"); and (4) a violation of Article 114 of the Massachusetts Constitution. As to each, she seeks to recover long-term disability benefits under

---

[4] Iwata refers to the Plan as "the employee disability policy which covered her."

[5] This determination and Iwata's earlier receipt of short-term disability benefits have no bearing on her eligibility for long-term disability benefits under the Plan, as they are based on entirely different standards.

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

the Plan, in addition to other statutory damages.  Each of these claims fails as a matter of law, and the Complaint should be dismissed.

I.  Defendants May Properly Rely On the Denial Of Benefits Letter

As a preliminary matter, Defendants may properly rely on the letter from Matrix to Plaintiff, denying her claim for long-term disability benefits, in support of their motion to dismiss pursuant to Rule 12(b)(6).  While the letter is not attached to the Complaint, Iwata quotes from and relies upon the document in her Complaint.  It is well-settled that Defendants may rely upon the document in its entirety without transforming their motion to dismiss into one for summary judgment.  See, e.g., Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) ("Although much of the evidence contained in the record is out-of-bounds in reviewing a 12(b)(6) dismissal, it is well-established that in reviewing the complaint, we 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment'") (citation omitted); Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996) (same).  See also Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1014-15 (1st Cir. 1988).

II.  Iwata's Claim for Denial of Long-Term Disability Benefits Under ERISA Fails As A Matter of Law

In her first claim for relief, Iwata alleges that Defendants "discriminated against, interfered with, the plaintiff's right to long-term disability benefits" in violation of 29 U.S.C. § 1140.  Complaint, ¶ 47.  Iwata simply has not alleged a claim under that statutory provision of ERISA.  Section 510 (29 U.S.C. § 1140), entitled "Interference with protected rights," states that "[i]t shall be unlawful for any person to discharge, fire, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled

FHBoston/1042799.3                                  - 5 -

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled . . ." 29 U.S.C. § 1140.

By its terms, Section 510 of ERISA does not apply to the circumstances of this case. The law is well-established that "[t]he ultimate inquiry in a Sec. 510 case is whether [an] employment action was taken with the specific intent of interfering with the employee's ERISA benefits." Benham v. Lenox Sav. Bank, 118 F.Supp.2d 132, 141 (D. Mass. 2000); see also Lehman v. Prudential Ins. Co. of America, 74 F.3d 323, 330 (1st Cir. 1996). Here, Iwata does not allege that the Defendants took any employment action against her for the purpose of interfering with the attainment of any right to benefits under the Long-Term Disability Plan. She does not dispute that her employment was terminated because her short-term disability benefits expired and she was unable to return to work. Instead, her claim rests on the denial of her application for long-term disability benefits. While Iwata apparently disagrees with the determination that she was not entitled to those benefits under the Plan, that is not a claim of discrimination under Section 510, but a denial of benefits under Section 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)). See Caolo v. Delta Air Lines, Inc., 35 F.Supp.2d 47, 50 n.6 (D. Mass. 1999) (explaining that an action for benefits is not proper under Section 510 and should be brought pursuant to Section 502(a)(1)(B)); Choi v. Massachusetts Gen. Physicians Org., Inc., 66 F.Supp.2d 251, 254 (D. Mass. 1999) (explaining that a claim under Section 510 requires a showing that that the defendant took an action for a discriminatory purpose).

Even if Iwata really seeks to bring a claim under Section 502(a)(1)(B), that claim must fail. Iwata concedes that Intel's Long-Term Disability Plan expressly did not cover her injury. As the letter denying her application made clear, the Plan provided long-term disability coverage for a mental disability which required hospitalization. Iwata was never hospitalized, and thus,

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

according to the express terms of the Plan, was not eligible for benefits.[6] While Iwata apparently objects to the Plan's conditioning of coverage for a mental disability upon hospitalization, ERISA makes clear that an employer is not required to provide any particular level of benefits. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983).  Thus, Defendants were free under ERISA to limit long-term disability benefits for mental disabilities to those requiring hospitalization.

Further, although Iwata was properly notified of her right to appeal the denial of benefits, Iwata does not allege that she ever exhausted the internal appeals process of the Long-Term Disability Plan.  That omission is fatal to her claim for denial of benefits, because a participant must exhaust her administrative remedies prior to bringing suit.  See Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821, 825-26 (1st Cir. 1988); Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998) (a plan participant must first exhaust the administrative procedures set forth in the plan before bringing suit for denial of benefits).  Thus, regardless of how she stylizes her claim, Iwata does not assert a valid claim for relief under ERISA.

III.   Iwata Has Failed to Allege A Claim Under the Rehabilitation Act

In her second claim for relief, Iwata alleges a violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794).[7]  However, coverage under that statute is limited to entities which receive federal financial assistance.  See 29 U.S.C. § 794; see also Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (explaining that the Rehabilitation Act "applies to federal agencies, contractors and recipients of federal financial assistance"); Lesley v. Chie, 250 F.3d 47, 52-53 (1st Cir. 2001) (explaining that for plaintiff to set out a valid claim under Section

---

[6]  Of course, Iwata received all of the short-term disability benefits to which she was entitled.

[7]  Iwata incorrectly refers to 29 U.S.C. § 394, a non-existent provision.  Defendants understand this to be a typographical error.

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

504 of the Rehabilitation Act, she has to show, among other elements, "that she sought services from a federally funded entity"). Nowhere in her Complaint does Iwata allege that Intel and/or Matrix are recipients of federal funding, an essential element for bringing a claim under the Rehabilitation Act. On this basis alone, the claim should be dismissed.

Moreover, even if the Court were to ignore Iwata's failure to allege that Defendants receive federal funding, the facts otherwise alleged do not state a claim for relief under the Rehabilitation Act. While Iwata apparently claims that the limitations of coverage for mental disabilities under the Plan is discriminatory, nothing in the Rehabilitation Act forbids such limitations. See Modderno v. King, 82 F.3d 1059, 1061-62 (D.C. Cir. 1996) (affirming dismissal of claim under the Rehabilitation Act that plan discriminated against persons with mental disabilities); see also Traynor v. Turnage, 485 U.S. 535, 549 (1988) ("There is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons."). Further, courts generally look to case law under the ADA when interpreting the Rehabilitation Act, see, e.g., Calero-Cerezo, 355 F.3d at 19, and, as set forth below, that case law uniformly rejects the theory of discrimination that Iwata seeks to bring here. Iwata's claim under the Rehabilitation Act should be dismissed.

IV.   Iwata Fails to State a Claim Under the Americans With Disabilities Act

The same result pertains to Iwata's third claim for relief, in which she alleges that Defendants violated the Americans with Disabilities Act.[8] Like her claim under the Rehabilitation Act, Iwata claims that the limitation of coverage under the Long-Term Disability Plan for persons with a mental disability is discriminatory. As a matter of law, this claim fails.

---

[8] Iwata cites to 29 U.S.C. § 1630.4(f). There is no such statutory provision. Defendants assume that Iwata is referring to 42 U.S.C. § 12112, which prohibits discrimination in employment against a person with a disability.

FHBoston/1042799.3                                - 8 -

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

First, courts have uniformly held that the ADA does not require employers to provide a particular level of long-term disability benefits for persons with a mental illness or disorder, and that so long as the long-term disability plan provides benefits equally to all participants, the ADA is fully satisfied. See Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1116-17 (9th Cir. 2000) (conditions on long-term disability benefits for mental illnesses did not constitute discrimination under the ADA, as conditions were equally applicable to all employees); EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000) (affirming dismissal pursuant to Rule 12(b)(6) of ADA claim because the statute did not require an employer to provide a particular level of benefits); Kimber v. Thiokol Corp., 196 F.3d 1092, 1102 (10th Cir. 1999) (same); Lewis v. Kmart Corp., 180 F.3d 166, 172 (4th Cir. 1999) (same); Ford v. Schering-Plough Corp., 145 F.3d 601, 608 (3d Cir. 1998) (same); Parker v. Metropolitan Life Ins. Co., 121 F.3d 1006, 1015-19 (6th Cir. 1997). As the Third Circuit explained, "[s]o long as every employee is offered the same plan regardless of that employee's contemporary or future disability status, then no discrimination has occurred even if the plan offers different coverage for various disabilities." Ford, 145 F.3d at 608.

While the First Circuit has not addressed the issue, this Court has rejected a claim of discrimination like that asserted here. In Wilson v. Globe Specialty Products, Inc., 117 F.Supp.2d 92 (D. Mass. 2000), the plaintiff alleged that a limitation on benefits for mental illness under a disability plan violated the ADA. There, the plan limited disability benefits for mental illness to a period of 24 months. On defendants' motion to dismiss, the Court held that the ADA did not require a benefit plan to provide a particular level of benefits and dismissed the plaintiff's claim under the ADA.[9] See id. at 96-97. Thus, here, Defendants were free as a matter of law to

---

[9] The Court reached that conclusion for four reasons: (1) "the circuit law on the subject overwhelmingly supports this conclusion;" (2) the legislative history of the ADA "favors ruling that the ADA permits different benefits for

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

limit long-term disability benefits for mental illnesses to those persons who seek hospitalization. As Iwata does not claim that Defendants failed to apply that limitation equally to all plan participants, her claim must fail.

Second, Iwata's claim of disability discrimination also fails because, as she admits in her Complaint, she is totally disabled. Indeed, she alleges that the United States Social Security Administration concluded that she was totally disabled and thus unable to work. Yet to prevail on a claim of discrimination under the ADA (and also under the Rehabilitation Act), Iwata must show that she could perform the essential functions of her job with or without a reasonable accommodation. See 42 U.S.C. § 12112. Nowhere does Iwata allege that she could have performed the essential functions of the job, let alone explain the apparent inconsistency between making such a claim and the prior determination of total disability. See Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 797-98 (1999); Sullivan v. Raytheon Co., 262 F.3d 41, 47 (1st Cir. 2001). Indeed, the very fact that Iwata seeks as a remedy her "accrued long-term disability benefits," see Complaint, ¶ 54, underscores that Iwata continues to believe that she is unable to work due to total disability and, thus, cannot perform the essential functions of the job.

Finally, Iwata's claim under the ADA must fail because she failed to appeal the denial of long-term disability benefits through the plan appeal process. In Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90 (1st Cir. 2000), the First Circuit held that plaintiffs' ADA claim that the defendant's initial benefit denial was discriminatory failed because the plan ultimately reversed that decision through its appeal process. Under that logic, before Iwata is permitted to bring a claim that any denial of benefits violates the ADA, she should first have to

---

mental and physical disabilities, so long as all individuals have equal access to the insurance plan;" (3) the result was consistent with case law under § 504 of the Rehabilitation Act and (4) legislative action since the passage of the ADA, namely Congress's passage of the Mental Health Parity Act, supports the conclusion, as that legislation was a compromise and did not mandate equal benefits to persons with disabilities. Id.

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

provide the plan an opportunity to consider and possibly redress that claim. She cannot avoid the import of Tompkins simply by disregarding the plan's internal appeal process.

V.   Iwata's Claim Under the Massachusetts Constitution Is Preempted By ERISA.

Finally, Iwata's fourth claim for relief alleges that Defendants violated Article 114 of the Massachusetts Constitution. Complaint, ¶ 56. Article 114 of the Amendments to the Massachusetts Constitution states that, "No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth." The basis of Iwata's claim under this Article is that Defendants discriminated against her by interfering with "the plaintiff's right to long-term disability benefits." Complaint, ¶ 56. In her Prayer for Relief, Iwata seeks to recover "money damages for lost benefits." See Complaint, Prayer For Relief, ¶ 4.

Iwata's claim is preempted by ERISA. ERISA preempts any and all state law claims "insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144; see also McMahon v. Digital Equip. Corp., 162 F.3d 28, 36 (1st Cir. 1998). A state law cause of action is "expressly preempted by ERISA where a plaintiff, in order to prevail, must prove the existence of, or specific terms of, an ERISA plan." See id. at 38 (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140 (1990)).

There is no dispute that the long-term disability plan is an ERISA-covered plan. Iwata concedes that this Court has jurisdiction pursuant to ERISA and brings a claim directly under that statute related to the denial of her long-term disability benefits. See Complaint, ¶¶ 1, 47-48. Moreover, the letter denying her application for long-term disability benefits made clear that Iwata had certain rights under ERISA. See Exhibit 1 hereto. Finally, the long-term disability

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

plan falls squarely within the statutory definition of an ERISA-governed plan. Under ERISA, an "employee welfare benefit plan" is any plan maintained by an employer "for the purpose of providing for its participants . . . benefits in the event of sickness, accident, disability . . ." 29 U.S.C. § 1002(1).

As the Long-Term Disability Plan is an ERISA-governed plan, Iwata's claim under the Massachusetts Constitution to recover benefits under the Plan is subject to ERISA's broad preemption provision. At its heart, Iwata's claim under Article 114 is one to recover long-term disability benefits under the Plan. The fact that her claim is framed as one for discrimination does not provide an escape from ERISA preemption, because Iwata seeks to challenge a term of the plan as discriminatory. In Jorgensen v. Massachusetts Mutual Life Insurance Co., No. 99CV31072, 27 E.B.C. (BNA) 1407, 2001 WL 1736636 (D. Mass. Nov. 27, 2001), the plaintiff brought a state law claim that the denial of severance benefits under a severance plan discriminated against him on the basis of his disability. Id. at *4. The Court found the claim to be preempted because "Jorgensen's 151B claim is for the improper denial of benefits under MassMutual's employee benefit plan, it obviously 'relates to' an employee benefit plan and is preempted by ERISA. Id. at *8; see also Buckley v. Arcadian Corp., 790 F.Supp. 643, 645-46 (M.D. La.) (plaintiff's claim that she had been discriminatorily denied leave benefits for mental illness was preempted, because plaintiff's "claims of handicap discrimination are in fact directly related and intertwined with the claim for denial of benefits"), aff'd, 977 F.2d 578 (5th Cir. 1992). Iwata's claim under Article 114 is no different, and for the same reasons, it should be dismissed as preempted.[10]

---

[10] Even if the claim were not preempted, it still should be dismissed. While Massachusetts law may recognize an implied private right of action under Article 114, courts have uniformly held that, in the employment context, discrimination can be remedied under the general antidiscrimination statute M.G.L. ch. 151B and the existence of that statutory scheme precludes a right of action directly under the Massachusetts Constitution. See Conway v.

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

CONCLUSION

For these reasons, Intel and Matrix respectfully request that the Court dismiss the Complaint with prejudice and grant such other and further relief as the Court deems just and proper.

INTEL CORP. AND MATRIX
ABSENCE MANAGEMENT, INC.

By their attorneys,

s/ Robert A. Fisher
Michele A. Whitham, BBO # 553705
Robert A. Fisher, BBO # 643797
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Date:   May 6, 2004

CERTIFICATE OF SERVICE

I, Robert A. Fisher, hereby certify that on May 6, 2004 I caused to be served by U.S. mail, postage prepaid, a true and correct copy of the foregoing document upon counsel of record for each other party in this matter.

s/ Robert A. Fisher

---

Boston Edison Co., 745 F.Supp. 773, 779 (D. Mass. 1990); Tate v. Department of Mental Health, 645 N.E.2d 1159, 1165 (Mass. 1995) (affirming summary judgment for defendant on plaintiff's claim under Article 114 and explaining that "[a] claim under G.L. c. 151B provides adequate relief to redress handicap discrimination by an employer and, therefore, precludes a right of action arising directly under the Massachusetts Constitution"). Of course, here, a claim under Chapter 151B also would be preempted. Indeed, this was the conclusion reached by the Massachusetts Commission Against Discrimination in dismissing the 151B claim asserted by Iwata in that forum.

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com