UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEANNE M. IWATA,<br><br>          Plaintiff,<br><br>     v.<br><br>INTEL CORPORATION and MATRIX ABSENCE MANAGEMENT, INC.<br><br>          Defendants. | C.A. No. 04-10536 (WGY) |

**DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION TO DISMISS**

    Defendants Intel Corporation ("Intel") and Matrix Absence Management, Inc. ("Matrix") (collectively "Defendants") submit this brief reply memorandum in support of their joint motion to dismiss the Complaint of Plaintiff Jeanne Iwata ("Iwata").

    Iwata presents no good reason why her Complaint should not be dismissed in its entirety. At bottom, her Opposition is a request that the Court create a cause of action, which the law has in fact already unequivocally rejected. She asserts that she "does not demand a higher level of benefits than the employer has offered; rather she simply seeks long-term disability benefits on the same basis as any other employee, without being required to submit to a hospitalization . . . in order to receive the same benefits as physically-disabled individuals who are allowed to receive long-term benefits while living at home." Opposition, p. 7. But Intel's Long Term Disability Plan ("Plan") imposes the same requirements on all employees equally, and Iwata does not allege otherwise. That is all the law requires, and her claims should be dismissed.

FHBoston/1069236.1

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

I.      Iwata's Claim That Intel Caused Her Injury Does Not State A Claim for Relief

Apparently recognizing that the facts alleged in the Complaint do not state a cognizable claim, Iwata for the first time states in her Opposition that Intel caused her disability by failing to respond to the threat by a Co-worker to "get a gun permit."  Opposition, pp. 1-2.  According to Iwata, this failure "exceed[ed] any kind of negligence."  Opposition, pp. 2-3.  Regardless of whether this is true, it is irrelevant to her claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), the Americans With Disabilities Act ("ADA"), or the Rehabilitation Act.  Those statutes simply do not provide for causes of action for alleged workplace injuries, even if caused by some omission by the employer.

Moreover, while it is unclear whether Iwata in fact believes that Intel acted negligently or committed some sort of intentional tort, as to either, her exclusive recourse would be via the administrative procedures set forth in the Massachusetts Workers' Compensation Act, a claim she has not pled.  See M.G.L. ch. 152, § 24; see also Andresen v. Diorio, 349 F.3d 8, 16 (1st Cir. 2003) (affirming dismissal of negligence and intentional tort claims for injuries arising out of and in the course of employment); Tavares de Almeida v. Children's Museum, 28 F.Supp.2d 682, 689 (D. Mass. 1998) (explaining that a claim of emotional distress arising out of the employment relationship is a personal injury compensable exclusively under the Massachusetts Workers Compensation Act); Chatman v. Gentle Dental Ctr. of Waltham, 973 F.Supp. 228, 240 (D. Mass. 1997) (claims for personal injuries stemming from negligence or intentional torts committed in the course of the employment relation should be dismissed because plaintiff's exclusive remedy is pursuant to the Workers' Compensation Act).  These cases make clear that to the extent that Iwata is silently requesting to amend her Complaint to add some sort of negligence claim or intentional tort, that request must be denied, as any such claim is barred by the exclusivity

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

provisions of the Workers' Compensation Act.

II.     Iwata Fails To State A Claim Under ERISA

As set forth in Iwata's Opposition, the essence of her claims under ERISA is that the statute should be interpreted as requiring Defendants to maintain the same conditions under the Plan for eligibility to benefits for mental disabilities as for physical ones.  Opposition, p. 7.  She cites no case, statute or regulation for that proposition.  In fact, her position is directly at odds with the Supreme Court's statement in Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91 (1983), that "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits."  It also is at odds with this Court's decision in Wilson v. Globe Specialty Products, Inc., 117 F.Supp.2d 92, 97-98 (D. Mass. 2000), in which it explained that "ERISA does not require that employment plans provide equal benefits for different disabilities" and dismissed plaintiff's claim that ERISA prohibited disparate treatment of mental and physical disabilities under a benefit plan.  See also Edes v. Verizon Communications, Inc., 288 F.Supp.2d 55, 58-59 (D. Mass. 2003) (dismissing claims for benefits under plan and for discrimination under ERISA where plaintiffs alleged that the employer unlawfully provided unequal levels of benefits).

Despite that her position is inconsistent with established Supreme Court precedent and decisions of this Court, Iwata nonetheless presses both a denial of benefits claim under Section 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(b)) and a claim of discrimination under Section 510 (29 U.S.C. § 1140).  As to her denial of benefits claim, Iwata does not dispute that she did not satisfy the requirements of the Plan.  Her only contention is that the requirements are different from those for benefits for physical disabilities and thus are discriminatory.  As set forth above, this simply does not state a claim for relief under ERISA.

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

As to her claim of discrimination, Iwata attempts to fit herself within that statutory provision by asserting in her Opposition that she "was discharged for attempting to exercise her right to long-term disability benefits" and that the terms of the Plan were discriminatory. Opposition, p. 7. But as the Complaint and her Opposition make clear, her termination was caused by her inability to return to work because of her continuing disability. Complaint, ¶ 42 ("On February 2, 2002, the plaintiff's employment with Intel was terminated because of her inability to return to work"); Opposition, p. 6 ("The discharge of the plaintiff because she did not return from sick leave although she was still medically disabled, . . . properly presents an issue which is actionable"). In essence, her claim of discrimination simply is that she was terminated because her short-term disability benefits expired, she was denied long-term disability benefits and she continued to be unable to return to work because of her disability. But these allegations do not amount to a claim of discrimination under Section 510. Nothing in that provision or ERISA generally requires an employer to retain an employee who is unable to work due to illness or disability.

Finally, Iwata does not dispute that she never exhausted the administrative remedies under the Plan. Instead, she claims that doing so would have been futile. But Iwata presents no facts to suggest that she would have received anything less than a full and fair review of her claims, refuting any claim of futility. See Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821, 825-26 (1st Cir. 1988). Her subjective belief that an appeal would have been unsuccessful simply is not "futility." Indeed, for the Court to adopt her position would effectively cause the futility exception to swallow the rule requiring exhaustion of administrative remedies.

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

III.     Iwata Has Failed to Allege A Claim Under the Rehabilitation Act

Iwata concedes that she has failed to allege that Defendants are entities which receive financial assistances, an essential element of a claim of a violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794).  While she suggests that this does not matter because she does not need to allege every fact, this simply is not the law.  As the First Circuit has made clear the minimal pleading requirements "'are not tantamount to nonexistent requirements,'" and a plaintiff seeking to survive a motion to dismiss "must set forth 'factual allegations . . . respecting each material element necessary to sustain recovery under some actionable legal theory.'"  See Cooperman v. Individual, Inc., 171 F.3d 43, 47 (1st Cir. 1999) (citation omitted).  Iwata simply has not done that.  While she attempts to remedy this problem by pointing out that the Plan permits offsetting long-term disability benefits by amounts received by the participant through Social Security, even if true, that fact is irrelevant.  Iwata cites no law to suggest that this is sufficient to trigger coverage under the Rehabilitation Act.  See 29 U.S.C. § 794.  On this basis alone, the claim should be dismissed.

Regardless of whether there is even coverage under the Rehabilitation Act, Iwata nonetheless fails to state a claim under that statute.  Again, her claim is that the Plan's differing requirements for physical and mental disabilities is discriminatory, but again cites no law to support that claim.  Her only argument is that the Supreme Court's statement in Traynor v. Turnage, 485 U.S. 535, 549 (1988), that "[t]here is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons," does not apply to her case.  Iwata provides no support for that remarkable assertion, and, indeed, it is contrary to the decisions of other courts.  See, e.g.,

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

Modderno v. King, 82 F.3d 1059, 1061-62 (D.C. Cir. 1996) (affirming dismissal of claim under the Rehabilitation Act that plan discriminated against persons with mental disabilities).

IV.   Iwata Fails to State a Claim Under the Americans With Disabilities Act

Iwata contends that the Americans With Disabilities Act prohibits different conditions for the receipt of benefits for different disabilities. She relies on two cases for that proposition, Olmstead v. Zimring, 527 U.S. 581 (1999) and Johnson v. K Mart Corp., 273 F.3d 1035 (11th Cir. 2001). Neither case supports Iwata's position. Olmstead simply is inapposite to the circumstances of this case. There, the Supreme Court addressed whether Title II of the ADA, which applies to public services, required the state of Georgia to place persons with mental disabilities in a community setting rather than institutions. See 527 U.S. at 587. The Supreme Court held that, under Title II of the ADA, "States are required to provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." Id. at 607. The Court never addressed the issue presented here; nor did it suggest that the principles governing a state's obligations under Title II had any impact on an employer's provision of long-term disability benefits. See, e.g., Wilson, 117 F.Supp.2d at 97 (rejecting argument that Olmstead prohibits different requirements for different disabilities under benefit plans). As to Johnson v. K Mart, Iwata concedes that the case is not good law, as it was vacated by the full court.[1] See Opposition, p. 13; see also Johnson, 273 F.3d at 1070.

---

[1] Iwata's suggestion that the decision is still in the federal reporter "on library shelves, and is available online" is a non sequitur.

FHBoston/1069236.1                              - 6 -

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

Iwata has no answer to the fact that the federal courts have uniformly rejected the argument she makes here.  <u>See</u> Defendants' Memorandum of Law, p. 9 (citing cases).  At bottom, she asks the Court to either depart from these cases or to carve an exception for her, despite that no other court has found any such exception to exist.  <u>See</u> Opposition, pp. 14-15.  She contends that this case presents "unusual circumstances" because she suffered disabling emotional stress during her employment at Intel.  Regardless of whether this is true,[2] her request that the Court create such an exception is nothing more than a backdoor attempt to circumvent the exclusivity provisions of the Massachusetts Workers' Compensation Act.

V.   <u>Iwata's Claim Under the Massachusetts Constitution Is Preempted By ERISA</u>

While Iwata argues that her claim for relief that Defendants violated Article 114 of the Massachusetts Constitution is "not automatically" preempted, she provides no explanation and no legal support for why ERISA preemption should not apply here.  <u>See</u> Opposition, p. 16.  As she does not dispute that she seeks to obtain long-term disability benefits via this claim, it falls squarely within the scope of ERISA preemption.

---

[2]  Defendants note in this regard that Iwata has never asserted a "traditional" discrimination claim that she was terminated because of her disability either before the MCAD, the EEOC or any Massachusetts state or federal court.

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com

CONCLUSION

For these reasons, Intel and Matrix respectfully request that the Court dismiss the Complaint with prejudice and grant such other and further relief as the Court deems just and proper.

INTEL CORP. AND MATRIX
ABSENCE MANAGEMENT, INC.

By their attorneys,

s/ Robert A. Fisher
Michele A. Whitham, BBO # 553705
Robert A. Fisher, BBO # 643797
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Date:   June 21, 2004

CERTIFICATE OF SERVICE

I, Robert A. Fisher, hereby certify that on June 21, 2004 I caused to be served by U.S. mail, postage prepaid, a true and correct copy of the foregoing document upon counsel of record for each other party in this matter.

s/ Robert A. Fisher

PDF created with FinePrint pdfFactory Pro trial version www.pdffactory.com