UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10536-WGY

| | |
|---|---|
| JEANNE M. IWATA, | ) |
|   Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| INTEL CORPORATION | ) |
| and MATRIX ABSENCE | ) |
| MANAGEMENT, INC., | ) |
|   Defendants | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**

The plaintiff hereby proffers this brief response to the defendants' *Supplemental Memorandum*.

At hearing, the Court requested the parties to provide it with memoranda regarding the legislative history of ERISA and the ADA, as the defendants acknowledged on the first page of their memo. Heedless of that, however, they proceeded to spend most of their memorandum on attempts to draw inferences from Congress' subsequent silence on the subject of discrimination in the provision of disability insurance, on the heels of their citation to *Dewsnup v. Timm*, 502 U.S. 410, 419-20 (1992) for the proposition that inferences should not be drawn from Congressional silence. Congressional failure to act on proposed legislation is analogous to a denial of certiorari by the Supreme Court—no inference may be drawn from it.

Just as importantly, the legislation the defendants focus on—both that which was enacted and that which was not—was not even addressed to disability

insurance, but to health insurance, which is attended by quite different cost considerations.

Health insurance is addressed to payment for treatment. Whether discrimination in the benefits provided for treatment of mental versus physical disabilities offends equal protection by discriminating against a feared and insular minority (the mentally disabled), and whether the justifications offered for that discrimination must be compelling rather than merely colorable—particularly in the context of agreeing to pay only for a form of treatment (institutionalization) that the medical profession has come to reject—is a battle for another day, and a battle that could involve a challenge to the constitutionality of the differential treatment of the mentally disabled by Congressional legislation under the Equal Protection Clause.

What is before the court now, however, is a separate question. Regardless of questions about whether it is justifiable to require institutionalization before payment for *treatment* of mental disabilities, the question is whether it is justifiable, once a person is considered disabled, to condition *income replacement* on different criteria depending on the type of disability, once again discriminating against a feared and insular minority.

The plaintiff submits that whatever the merits of discrimination in health insurance benefits, and whatever arguments may be offered to support requiring institutionalization for treatment, they are irrelevant when it comes to replacing income. The only relevant question is whether the person is disabled from

working, and thus needs income replacement.[1]

Differential treatment of a class of minorities is only permissible when there is a legitimate business reason. Once a person is disabled, it makes no difference to the employer what the variety of disability is and whether they are institution-alized—except that, if anything, institutionalization costs the employer *more* for its health insurance premiums than would outpatient treatment.

The only bearing that the requirement of institutionalization has is as a way to deny benefits, since the insurers know that doctors are reluctant to use it any more. It thus constitutes a thinly-veiled explicit discrimination against the mentally-disabled. It is not a legitimate business reason.

Finally, it is unclear why the defendants rely on the Superior Court ruling against the plaintiff in *Currie v. Hartford Life Insurance Co.*, C.A, No. 00-1831-H, 2000 Mass. Superior. LEXIS 306 (Jan. 24, 2002). As the defendants are no doubt aware, the Supreme Judicial Court granted direct appellate review of that ruling, under the name of *Currie v. Group Insurance Commission*, SJC-08787, solicited amicus briefs, held oral argument, and the Commonwealth settled the case with the plaintiff (by a notice of settlement filed October 4, 2002) before the case was decided.

---

1.    The defendants' argument that total disability takes someone outside the coverage of the Americans with Disabilities Act disregards the difference between discrimination in hiring and discrimination in benefits—at the time Iwata became a participant in the benefits plan by working at Intel, she was able to work.

    To rule any other way would mean that when it comes to reviewing discrimination in disability insurance, the *courts* are completely disabled.

In that posture, the Superior Court's ruling is of questionable persuasive value, as is the defendants' closing reference to the Commonwealth's not having legislation addressed to equal treatment of disability insurance (for the reasons discussed above about not drawing inferences from legislative silence).[2]

                            Respectfully submitted,

                            JEANNE M. IWATA

                            By her attorneys,
                            /s/
                            Paul L. Nevins
                            BBO No. 369930
                            47 Church Street
                            Wellesley, Massachusetts 024182
                            (781) 237-9018
                                and
                            /s/
                            Philip R. Olenick
                            BBO No. 378605
                            101 Tremont Street - Suite 801
                            Boston, Massachusetts 02108
                            (617) 357-5660

---

2. As to the defendants' attachment of the MCAD's dismissal of Iwata's charge on the basis of ERISA preemption, it is well-recognized in Massachusetts that decisions of the MCAD that do not proceed beyond the initial investigation stage to public hearing are not admissible in court.

    Under *Christo v. Boyle*, 402 Mass. 815 (1988), rulings of the MCAD other than final decisions at the formal public hearing stage are not reviewable under chapter 30A and thus do not control *de novo* consideration in Superior Court of the same issues. See also *Brunson v. Wall*, 405 Mass. 446 (1989), which makes the same distinction. (In *Christo* the case had not gone to the public hearing stage at the Commission, in *Brunson* it had.)

    Those cases make clear that decisions of an investigating commissioner do not control the result in court, and in fact the practice in Massachusetts courts is to treat such decisions as inadmissible—only the fact that complaint was made to the MCAD is admissible, to show compliance with the presentment requirement of chapter 151B.